**James L. MORMAN, Plaintiff,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 86–70204.**

United States District Court, E.D. Michigan, S.D.

Oct. 13, 1987.

**994**

Michael A. Conway, Troy, Mich., for plaintiff.

John C. O'Meara, Dickinson, Wright, Moon, VanDusen & Freeman, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

### I. BACKGROUND

Plaintiff, a black man, brought this employment discrimination action, alleging that he was constructively discharged and that race was a factor in his termination.

Plaintiff was a John Hancock employee for thirteen (13) years. He started as a sales agent, selling insurance to clients in the Detroit area. He worked his way up through various management level positions. Comments about plaintiff's performance as a manager were uniformly laudatory.

Finally, in 1981, plaintiff was appointed general agent (head) of the Toledo, Ohio agency—one of defendant's poorest performing agencies in the country. In early 1983, defendant removed plaintiff as the Toledo general agent and demoted him eventually back into a sales agent position with another agency. Plaintiff protested his treatment in a letter to the president of the John Hancock Company. In the letter, plaintiff suggested his removal as general agent might have been race-related and asked the president to look into the matter personally. Defendant's president testified at trial that he referred the letter to the personnel director and never considered it seriously.

At trial, one of plaintiff's arguments was that defendant's failure to exercise its voluntarily-adopted affirmative action plan (AAP) to re-examine plaintiff's removal as the Toledo general agent was some evidence of discrimination. I allowed plaintiff to argue this to the jury. Also, I admitted evidence of defendant's AAP and evidence that defendant failed to use the plan for plaintiff's benefit.

The jury found for plaintiff in the amount of $225,000. There was substantial evidence to support the jury's verdict.

Defendant now moves for a new trial claiming it was prejudicial error to allow the jury to consider evidence of defendant's failure to use its AAP in plaintiff's case.

### II. RELEVANCE OF AAP EVIDENCE

Defendant first argues that general agents in plaintiff's position are independent contractors and that it undertook no affirmative action commitment to general agents. Therefore, defendant argues, the cases involving failure to use an existing AAP simply do not apply. Defendant asserts that the jury may have found in plaintiff's favor based on a view that the AAP should have applied to general agents.

Second, defendant stresses language in some of the cases that there must be a "significant connection" between the failure to engage the AAP and the alleged mistreatment of plaintiff. Defendant asserts that there is no such significant connection here and that the prejudicial effect of admitting the AAP evidence substantially outweighed its probative value under the meaning of Fed.R.Evid. 403.

#### A. *Application of AAP to General Agents*

Exhibits introduced at trial proved: 1) that defendant advertised that its equal employment opportunity policy is enforced

by an AAP and that the policy applies to "all aspects of employment", Plaintiff's Exh. 21; 2) that there is a written AAP for general agents, Plaintiff's Exh. 25; and 3) that plaintiff's promotion to general agent was reflected in defendant's EEOC report. Plaintiff's Exh. 27.

Defendant argues that, while there are no documents to prove that the AAP excludes general agents, the deposition testimony of defendant's personnel officer proves that the plan has never applied to general agents. But, where, as here, an employer publicizes that its AAP reaches "all aspects of employment", the employer cannot be heard to claim that its internal understanding of the plan's applicability controls over that reasonably communicated to employees and the public.

### B. *Significant Connection Test*

In *Jamison v. Storer Broadcasting Co.,* 511 F.Supp. 1286 (E.D.Mich.1981) (Boyle, J.), *aff'd in part, rev'd in part,* 830 F.2d 194 (6th Cir.1987),[1] Judge Boyle admitted defendant's robust AAP as some evidence of reverse discriminatory intent, but cautioned:

> Absent a significant connection between the action taken against plaintiff and the presence of an affirmative action plan, exploration at trial of affirmative action policies must be carefully limited to protect the defendant from marginal inferences the jury might draw.... [T]he defendant's voluntary public use of the plan in this context provided a connecting

link between the plan and a motive to discriminate against plaintiff's decedent. 511 F.Supp. at 1295.

There is such a "significant connection" here. Defendant's refusal to examine plaintiff's assertion of race discrimination suggests an intent not to follow its own AAP. For policy reasons implicit in our antidiscrimination laws, "[a]n employer cannot be allowed to advertise itself as an affirmative action employer and then wink at its AAP when it gets in the way." *Fang–Hui Liao v. Dean,* 658 F.Supp. 1554, 1561 (N.D.Ala.1987).

### III. THE AAP AS SWORD

I ruled at trial that once an employer adopts an AAP and benefits from it as a shield from claims of discrimination, employees arguably protected by the plan can use it as a sword to challenge the propriety of their treatment.[2] My ruling follows the developing view in employment discrimination cases.

In *Craik v. Minnesota State University Bd.,* 731 F.2d 465, 472 (8th Cir.1984), the court states that "evidence that an employer has failed to live up to an affirmative-action plan is relevant to the question of discriminatory intent."

In a recent Supreme Court case, *Johnson v. Transportation Agency of Santa Clara County,* —— U.S. ——, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987), the court upheld the promotion of a woman employee over plaintiff pursuant to the employer's affirmative action program (taking sex into account as one factor in promotion decisions). Justice

---

**1.** Plaintiff's decedent, a white television sportscaster, filed a claim for reverse discrimination when he was terminated by defendant and replaced by a black sportscaster. Plaintiff's decedent later committed suicide and his former wife, as administratrix of his estate, was substituted as plaintiff. Plaintiff then amended the complaint to add a wrongful death claim against defendant.

The jury found for plaintiff on both claims. Judge Boyle entered judgment non obstante veredicto on the wrongful death claim but denied defendant's motion for judgment *n.o.v.* or new trial on the reverse discrimination claim. Defendant appealed and plaintiff cross-appealed.

The United States Court of Appeals for the Sixth Circuit affirmed Judge Boyle's Judgment

*n.o.v.* on the wrongful death claim but reversed the jury verdict for plaintiff on the reverse discrimination claim—holding that plaintiff simply failed to make out a prima facie case of reverse discrimination. The appellate panel in *Jamison* did not reach the issue of admission of defendant's AAP as evidence of discriminatory intent.

**2.** I remarked, out of the jury's hearing, that evidence of defendant's failure to investigate plaintiff's race-related complaints obviates the need to admit evidence that defendant failed to follow its AAP. I ruled, however, that, pursuant to the case law, plaintiff is entitled to present such evidence to the jury.

Stevens emphasized, in his concurring opinion, the importance of voluntary affirmative action programs:

> While I join the Court's opinion, I write separately to explain my view of this case's position in our evolving antidiscrimination law and to emphasize that the opinion does not establish the permissible outer limits of voluntary programs undertaken by employers to benefit disadvantaged groups.
>
> Antidiscrimination measures may benefit protected groups in two distinct ways. As a sword, such measures may confer benefits by specifying that a person's membership in a disadvantaged group must be a neutral, irrelevant factor in governmental or private decisionmaking or, alternatively, by compelling decisionmakers to give favorable consideration to disadvantaged group status. As a shield, an antidiscrimination statute can also help a member of a protected class by assuring decisionmakers in some instances that, when they elect for good reasons of their own to grant a preference of some sort to a minority citizen, they will not violate the law.
>
> .    .    .    .    .
>
> It remains clear that [Title VII] does not *require* any employer to grant preferential treatment on the basis of race or gender, but since 1978 the Court has unambiguously interpreted the statute to *permit* the voluntary adoption of special programs to benefit members of the minority groups for whose protection the statute was enacted.

107 S.Ct. at 1457–1459 (emphasis by Justice Stevens).

Judge Acker, in *Fang–Hui Liao v. Dean,* 658 F.Supp. 1554, 1559 (N.D.Ala.1987), adopts Justice Stevens' comments and goes even further to say: "If an employee who is granted a preferred status by court decree can enforce that judicially mandated preference, why should not the beneficiary of an AAP be able to do the same?"

In *Fang–Hui Liao,* the employer hired and promoted a highly qualified Asian female Ph.D. in chemistry pursuant to its affirmative action program. Defendant later eliminated plaintiff during a reduction in force (RIF) in which she was the only person laid-off in her department.

In strong language, Judge Acker held, without employing the shifting intermediate burdens analysis of *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), that defendant's failure to uphold its affirmative action commitment to plaintiff constituted a violation of Title VII:

> Once the employer is *permitted* voluntarily to adopt an AAP "to benefit members of the minority groups for whose protection the statute was enacted", the employer is then *required* to adhere to its own program. Otherwise, the adoption of an AAP would be meaningless. This court finds that by adopting its AAP for the avowed purpose of attaining a more balanced work force, plaintiff's employer not only succeeded in insulating itself from most complaints of reverse discrimination but placed in the hands of plaintiff and other protected employees a Title VII sword they would not otherwise have been able to wield. Defendants here cannot use their own self-mandate when convenient and ignore it when they find it bothersome. To allow an employer ... that brags in its own AAP materials about having hired and promoted its only Asian female Ph.D., to shelve its AAP when RIF time arrives, would be to encourage an hypocrisy which Justice Stevens and the other members of the majority in *Johnson v. Transportation Agency* could not tolerate.

658 F.Supp. at 1559 (emphasis in original) (*quoting Johnson, supra,* 107 S.Ct. at 1458–1459 (Stevens, J., concurring)).

## IV.   CONCLUSION

The cases show that adoption of an AAP is a two-way street on which the employer may reap certain benefits but on which a protected employee can use the AAP as a sword to attack an employer's alleged discrimination against the employee. Defendant complains that acceptance of the rule urged in these cases would be a disincen-

tive for employers to adopt affirmative action plans. If it is a disincentive to employers who will use an AAP as a shield from our antidiscrimination laws; to attain—but not maintain—racial balance; then so be it. Voluntary adoption of an AAP is not merely a commitment to increase the numbers of racial minorities and women for some short period of time—it is a commitment to identify and eliminate discrimination in the workplace. Therefore, an employer must not be allowed to hide behind its AAP when charged with discrimination.

Applying the rule, there is no disincentive to employers who are sincerely committed to establishing equality of employment opportunity and who wish to adopt meaningful AAPs.

I find that the prejudicial effect of the evidence introduced at trial regarding defendant's AAP did not substantially outweigh its probative value and that the evidence was properly admitted. Defendant received a fair trial and was not unduly prejudiced by admission of the AAP evidence.

Accordingly, Defendant's Motion for a New Trial is DENIED.

IT IS SO ORDERED.