Judith E. **MANUEL**, Plaintiff,

v.

**WSBT, INC., et al., Defendants.**

No. S86–572.

United States District Court,
N.D. Indiana,
South Bend Division.

June 2, 1988.

Ernest Beal, Jr., Fort Wayne, Ind., Bruce B. Elfvin, Cleveland, Ohio, for plaintiff.

Thomas J. Brunner, Candice Lichtenfels, South Bend, Ind., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on the motion for summary judgment filed by de-

fendants WSBT, Inc. (hereinafter "WSBT") and Schurz Communications, Inc. (hereinafter "SCI"). For the reasons set forth below, the defendants' motion should be granted.

### I. *Facts*

Plaintiff Judith Manuel has been the Office Manager at WSBT since 1981. Before her promotion to Office Manager, Ms. Manuel worked at WSBT from 1970–1981 as secretary to the General Manager and from 1967–1970 as secretary to the Chief Engineer.

Jack Douglas, then WSBT's General Manager, created the position of Office Manager in 1981 and selected Ms. Manuel to fill this newly-created position. Upon her promotion, Ms. Manuel became a salaried employee rather than an hourly employee. As a salaried employee, she could report to work thirty minutes later and was no longer required to punch a time clock. Although Ms. Manuel retained most of the duties that she had performed as secretary to the General Manager, such as maintaining personnel files, administering health claims, and doing the payroll, she no longer took dictation or performed other secretarial duties, such as answering the phone. Ms. Manuel is responsible for implementing, rather than establishing, company policy for WSBT.

In 1982, as part of corporate restructuring between SCI and WSBT, SCI transferred to the Office Manager at WSBT a number of responsibilities previously assigned to employees at another SCI subsidiary, the South Bend Tribune. The two South Bend Tribune employees who previously had performed those duties were female and one had a higher salary than Ms. Manuel.[1] Following the transfer of these duties, Ms. Manuel was relieved of further responsibilities as secretary to the General Manager.

In the course of her duties concerning WSBT's payroll in 1982, Ms. Manuel noticed that recently promoted male employees received significant salary increases at

---

1. The two South Bend Tribune employees were Beverly Cloud, supervisor of payroll, and Judy Slater, accounts payable clerk. Ms. Cloud's salary was between $4,000.00 and $8,000.00 higher than Ms. Manuel's in each year from 1981–1987.

the time of promotion or shortly thereafter, and that those male employees' salaries exceeded hers.

In October, 1982, following the transfer of responsibilities to her from the South Bend Tribune, Ms. Manuel went to E. Berry Smith, WSBT's President, to inquire about her compensation.[2] She asked him why she had not received a salary increase commensurate with her new responsibilities. Mr. Smith's only response was "just because", and he inquired no further into the matter in 1982.

In late 1983, Ms. Manuel again noticed the relative compensation levels of herself and WSBT's male employees when she received the annual budget's salary compensation plan for the 1983–84 fiscal year. She again approached Mr. Smith to inquire when she would be receiving an increase. Mr. Smith responded cryptically and made no inquiry into the disparities.[3]

On October 9, 1986, Ms. Manuel filed this action under Title VII, 42 U.S.C. § 2000e–2, alleging that WSBT discriminated against her on the basis of her sex by refusing to compensate her on the same basis as male managerial employees at WSBT. In his affidavit submitted in support of the defendants' summary judgment motion, Mr. Smith states that he sets the salaries for Ms. Manuel and other WSBT employees on the basis of "job performance and the compensation which must be offered to retain the services of the individual job holder, or the compensation required to attract a replacement person with the level of competence required for the job".

II. *Summary Judgment Standard*

In a summary judgment motion, the movant must first demonstrate that (1) no genuine issues of material fact exist for trial, and (2) the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Wilson v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 841 F.2d 1347 (7th Cir.

1988); *Munson v. Friske,* 754 F.2d 683 (7th Cir.1985). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donald v. Polk County,* 836 F.2d 376 (7th Cir.1988); *Valentine v. Joliet Township High Sch. Dist. No. 204,* 802 F.2d 981 (7th Cir.1986); *Klein v. Trustees of Indiana University,* 766 F.2d 275, 283 (7th Cir.1985). Summary judgment should be granted only if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Anderson v. University of Wisconsin,* 841 F.2d 737 (7th Cir. 1988); *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260 (7th Cir.1986).

When the parties do not dispute the factual basis of a motion for summary judgment, the reviewing court's only inquiry is whether judgment should issue as a matter of law. The burden of proof on this matter rests with the moving party. Summary judgment is inappropriate, however, if the parties disagree about inferences reasonably to be drawn from undisputed facts. *Bowyer v. United States Dept. of Air Force,* 804 F.2d 428 (7th Cir.1986).

When the parties dispute the facts, the parties must produce proper documentary evidence to support their contentions. The parties cannot rest on mere allegations in the pleadings, *Boruski v. United States,* 803 F.2d 1421 (7th Cir.1986); *Posey v. Skyline Corp.,* 702 F.2d 102 (7th Cir.), *cert. denied* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed. 2d 336 (1983), or upon conclusory statements in affidavits. *First Commodity Traders v. Heinold Commodities,* 766 F.2d 1007, 1011 (7th Cir.1985). Any permissible reasonable inferences from the documenta-

**2.** As WSBT's President, Mr. Smith was responsible for determination of any annual salary increases given to WSBT employees. Before the October 1 beginning of each fiscal year at WSBT, Mr. Smith submitted to SCI for approval a proposed budget, which included any projected changes in compensation.

**3.** Before the filing of Ms. Manuel's complaint, Mr. Smith made no attempt to inquire into the availability of salary survey data concerning local labor market conditions related to Ms. Manuel's position.

ry evidence must be viewed in the light most favorable to the non-moving party, *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Vachet v. Central Newspapers, Inc.*, 816 F.2d 313 (7th Cir.1987), as long as the inferences are reasonable. *Davis v. City of Chicago*, 841 F.2d 186 (7th Cir.1988). A party need not try its case by affidavit, but it must set forth some facts from which the court can reasonably infer that the party would be able to produce some evidence at trial to support its theory. *Matter of Morris Paint and Varnish Co.*, 773 F.2d 130 (7th Cir.1985). The non-moving party must show that the disputed fact is material, that is, outcome-determinative under the applicable law. *Wainwright Bank & Trust Co. v. Railroadmens Federal Savings & Loan Ass'n*, 806 F.2d 146 (7th Cir. 1986).

The defendants' summary judgment motion must be addressed with these standards in mind.

### III. *The Parties' Arguments*

In support of their summary judgment motion, WSBT and SCI argue that Ms. Manuel has come forward with no direct evidence of intentional sex discrimination to support her claim. They further argue that Ms. Manuel cannot establish a *prima facie* case of sex discrimination by indirect proof because her position is not "similar in skill, effort, and responsibility" to any of the male managerial employees to whom her complaint refers. The defendants also argue that Mr. Smith's affidavit asserts a legitimate non-discriminatory reason for the disparity between the salaries of Ms. Manuel and others.[4]

In response, Ms. Manuel argues that the asserted basis for WSBT's system of compensation is a pretext for sex discrimination. As proof of pretext, she cites the failure of anyone at WSBT to inquire into the salary disparities after she complained to Mr. Smith and the higher salary levels of the female employees at the South Bend Tribune, a subsidiary of defendant SCI.

In reply, the defendants argue that Mr. Smith was not obligated to conduct any inquiry into Ms. Manuel's salary and that no inference of pretext can be drawn from his failure to do so. They further argue that a comparison of salary levels of the named South Bend Tribune employees cannot prove pretext because (1) the South Bend Tribune is an entity separate from WSBT, (2) comparison of wage rates between employees of the same sex cannot establish sex discrimination, and (3) Ms. Manuel has come forward with no evidence to establish the similarity between the positions.

### IV. *Analysis*

#### A. *Title VII Standards*

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's ... sex". 42 U.S.C. § 2000e-2(a). Although the Equal Pay Act, 29 U.S.C. § 206(d)(1), also addresses the issue of sex-based wage discrimination under a standard of "equal work",[5] an em-

---

**4.** The defendants also have submitted affidavits from Phyllis Emmons, the Vice-President of a management consulting firm, and Dr. Susan Cornell–Ohl, the Research Director of Project Future, a local not-for-profit agency dedicated to business development in the community. In essence, these affidavits state that Ms. Manuel has received compensation commensurate with her responsibilities and the local labor market. These affidavits are immaterial to the court's summary judgment ruling. Mr. Smith's affidavit satisfies the defendants' burden of production, and the relevance of actual market conditions is limited by the holding in *Pollard v. Rea Magnet Wire Company*, 824 F.2d 557, 559 (7th Cir.), *cert. denied* — U.S. —, 108 S.Ct. 488, 98

L.Ed.2d 486 (1987) (so long as the employer honestly explains nondiscriminatory reason for discharge, accuracy of the employer's reason is not relevant to the issue of pretext).

**5.** The Equal Pay Act provides in pertinent part: No employer .... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays ... employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where payment is made pursuant to (i) a

ployee alleging sex discrimination in compensation may proceed under either Title VII or the Equal Pay Act. *County of Washington v. Gunther*, 452 U.S. 161, 177–78, 101 S.Ct. 2242, 2251–52, 68 L.Ed.2d 751 (1981); *American Nurses' Association v. Illinois*, 783 F.2d 716, 727 (7th Cir.1986). The four affirmative defenses specified in the Equal Pay Act also apply to suits brought under Title VII. 42 U.S.C. § 2000e–2(h); *County of Washington v. Gunther*, 452 U.S. at 171, 101 S.Ct. at 2249.

Under Title VII, an employee alleging disparate treatment [6] based on sex may prove a violation either by direct evidence of discriminatory intent or the indirect method outlined in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In a case involving an allegedly discriminatory failure to hire, the indirect method of proof allows a Title VII plaintiff to make a preliminary showing of discrimination, a *prima facie* case, through proof by a preponderance of the evidence: (1) that he or she belongs to a protected class; (2) that he or she applied and was qualified for a job for which the employer sought applicants; (3) that, despite those qualifications, he or she was rejected; and (4) that, after his or her rejection, the position remained open and the employer continued to seek applicants from persons with the complainant's qualifications. *Id.* The standard for a *prima facie* case is flexible and the elements of proof may vary depending on the factual situation. *McDonnell Doug-*

*las*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; *see Flowers v. Crouch–Walker Corp.*, 552 F.2d 1277 (7th Cir.1977) (applying the *prima facie* case to a claim of discriminatory discharge).

If a plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate some legitimate nondiscriminatory reason for the action taken. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *EEOC v. Sears, Roebuck & Company*, 839 F.2d 302, 308 (7th Cir.1988). If the employer comes forth with such a reason, then, to avoid summary judgment, the plaintiff must present evidence sufficient to create a factual issue as to whether the employer's articulated reason is a pretext for discrimination. *Id.* The burden of proof remains with the plaintiff at all times. *Id.*, 450 U.S. at 256, 101 S.Ct. at 1095.

Neither the Supreme Court nor the Seventh Circuit Court of Appeals has addressed the issue of what constitutes a *prima facie* case of unlawful wage discrimination under Title VII. In *Gunther*, the Court held that, even absent a showing of "equal work", an employer's acceptance of the recommendations of a comparable worth study [7] only as to the salaries of its male employees could constitute proof of intentional sex-based wage discrimination. 452 U.S. at 181, 101 S.Ct. at 2254; *see American Nurses' Association*, 783 F.2d at 721. However, the Court did not decide the "precise contours of lawsuits challenging sex discrimination in compensation under Title VII". 452 U.S. at 181, 101 S.Ct. at 2254.

seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. 29 U.S.C. § 206(d).

**6.** A Title VII violation may also be established without proof of an employer's discriminatory intent under the "disparate impact" theory. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 14, 97 S.Ct. 1843, 1854 n. 14, 52 L.Ed.2d 396 (1977).

**7.** "Comparable worth" is a term used to describe the effort to raise the ratio of wages in jobs predominantly held by women to wages in jobs predominantly held by men. *See American Nurses' Association*, 783 F.2d at 719. A compa-

rable worth study evaluates relative wage rates between jobs predominantly held by women that are similar in requirements, conditions, and responsibility to those predominantly held by men. *See American Federation of State, County, and Municipal Employees v. Washington*, 770 F.2d 1401, 1403 (9th Cir.1985) (discussing the criteria by which comparable worth was measured in the study that the State of Washington had commissioned). "At its broadest, 'comparable worth' encompasses any claim for sex-based wage discrimination that falls outside the scope of the Equal Pay Act['s] ... 'substantially equal' [standard]." B. Schlei and P. Grossman, *Employment Discrimination Law* at 475 (1983).

Since *Gunther*, the Seventh Circuit has held that an employer's failure to act on the recommendations of its own comparable worth study, standing alone, cannot provide the basis for a claim of sex-based wage discrimination. *American Nurses' Association*, 783 F.2d at 727. In a similar case, *American Federation of State, County, and Municipal Employees ("AFSCME") v. Washington*, 770 F.2d 1401 (9th Cir.1985), the Ninth Circuit held that an employer's failure to implement immediately the recommendations of a comparable worth study in place of a market-based system of compensation did not support a finding of discriminatory intent.

Although "*Gunther* suggests the type of evidence that is sufficient but perhaps not necessary to establish sex discrimination in wages for different work [and] *AFSCME* suggests the type of evidence that is insufficient", *American Nurses' Association*, 783 F.2d at 721, neither decision discusses the formulation of the *prima facie* case applicable to a claim of sex-based wage discrimination under Title VII. Two post-*Gunther* district court decisions have addressed this issue, however: *Briggs v. City of Madison*, 536 F.Supp. 435 (W.D.Wisc. 1982), and *Crockwell v. Blackmon–Mooring Steamatic, Inc.*, 627 F.Supp. 800 (W.D. Tenn.1985).

*Briggs* involved a suit under Title VII by women employed as public health nurses in Madison, Wisconsin. 536 F.Supp. at 437. The women alleged that the city intentionally discriminated against them on the basis of sex by employing them as public health nurses at a lower paying classification than that of male public health sanitarians who performed jobs requiring the same or a lesser degree of qualifications, skill, effort, and responsibility under similar working conditions. *Id.* The court defined the plaintiffs' *prima facie* case as requiring proof that:

(1) they are members of a protected class;

(2) they occupy a sex-segregated classification;

(3) they are paid less than

(4) a sex-segregated classification occupied by men; and

(5) the two sex-segregated classifications involve work that is similar in skill, effort, and responsibility.

*Id.* at 444, 446. Although the *Briggs* court held that the plaintiffs had proven the elements of their *prima facie* case, including a substantial similarity of work requirements and conditions, the court entered judgment for the city on the grounds that the plaintiffs had failed to prove that the defendant's reliance on its perception of market conditions was a pretext for discrimination. *Id.* at 446–48.

In another post-*Gunther* decision, the district court in *Crockwell v. Blackmon–Mooring Steamatic, Inc.* defined the elements of a Title VII *prima facie* case in the context of an individual female employee's claim of sex-based wage discrimination. 627 F.Supp. at 806. Mary Crockwell was employed as a household cleaner at a rate of $4.00 an hour; male cleaning technicians, or carpet cleaners, were paid at a rate of $5.00 an hour. Although carpet cleaners operated steam machines, both jobs involved the cleaning of fire-damaged buildings through strenuous physical work and required frequent lifting of heavy furniture and cleaning equipment. *Id.* at 802. The *Crockwell* court enumerated the following elements of a *prima facie* case:

(1) that the plaintiff is a member of a protected class,

(2) who received compensation at a rate less than that of similarly situated male employees, and

(3) performed work that, although not "substantially equal" within the meaning of the Equal Pay Act, had many similarities and included similar requirements of effort and responsibility to the work performed by the male employees.

*Id.* The court held that, because the jobs in question involved some of the same duties and were quite similar in work environment and degree of responsibility, the plaintiff had established a *prima facie* case of intentional sex-based wage discrimination. *Id.* The court further held that no

**660**

reason other than intentional sex discrimination could explain such a disparity. *Id.*

### B. *Ms. Manuel's Claim*

■ Under either the *Briggs* or *Crockwell* definition of a *prima facie* case of sex-based wage discrimination, a plaintiff must prove a similarity of skill, effort, and responsibility between her position and those held by male employees working for the defendant.[8] *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), requires the plaintiff to come forward with such evidence to oppose the defendant's motion for summary judgment successfully. Ms. Manuel has come forward with such no evidence. She merely has stated in a conclusory fashion in her deposition that her duties are comparable to those of every other subdepartment head employed at WSBT. Such a showing creates no genuine issue of material fact for trial. *First Commodity Traders v. Heinold Commodities*, 766 F.2d 1007, 1011 (7th Cir.1985).

For similar reasons, the court cannot infer proof of similarity in skill, effort, and responsibility from the common job title of "manager" or generic descriptions of duties, such as "implementing company policy".[9] *Cf. EEOC v. Sears, Roebuck & Company*, 839 F.2d at 345–46 (7th Cir. 1988) (job titles and descriptions alone are insufficient to establish substantial equality for purposes of the Equal Pay Act). Furthermore, none of the cases discussed above authorizes a cause of action under Title VII based on a comparison of the wage rates of dissimilar jobs of "comparable" value to their employer. *See Gunther*, 452 U.S. at 204, 101 S.Ct. at 2265 (Rehnquist, J., dissenting); *American Nurses' Association*, 783 F.2d at 720 ("[T]he issue of comparable worth ... is not of the sort that judges are well equipped to resolve intelligently."). Accordingly, because Ms. Manuel has not

come forward with evidence to support an essential element of her *prima facie* case, the defendants are entitled to judgment as a matter of law.

■ A second ground requires summary judgment for the defendants. Even assuming that Ms. Manuel has established a *prima facie* case of sex-based wage discrimination, no genuine issue of material fact remains as to whether the defendants' proffered reason is a pretext for unlawful discrimination. Mr. Smith's affidavit asserts a legitimate non-discriminatory reason for the disparity between the salaries of Ms. Manuel and others: "job performance and the compensation which must be offered to retain the services of the individual job holder, or the compensation required to attract a replacement person with the level of competence required for the job". In essence, these reasons constitute a reliance on individual performance and perceived market conditions, which are legitimate nondiscriminatory reasons under Title VII. *American Nurses' Association*, 783 F.2d at 726 (employer's reliance on market-based system of compensation, even with knowledge that those rates did not comport with comparable worth study, would not violate Title VII); *AFSCME*, 770 F.2d at 1406 (even if market reflects historical disparity of sex-based wage disparity, no inference of discriminatory motive can be drawn from employer's reliance on market because employer did not create market conditions).

■ Ms. Manuel's arguments that the failure of anyone at WSBT to inquire into the salary disparities and the higher salary levels of the female employees at the South Bend Tribune support an inference of pretext are unpersuasive. First, Mr. Smith's failure to inquire further into Ms. Manuel's complaints cannot support an inference of discrimination on these facts. Ms. Manu-

---

**8.** The *Crockwell* court did not mention skill as an element, but the jobs involved were relatively unskilled, manual labor positions. *See* 627 F.Supp. at 802.

**9.** In exhibit 6, which is attached to Ms. Manuel's deposition, the duties of other managerial em-

ployees at WSBT are described briefly in the following terms: number of employees supervised, authorized to pay invoices, attend department head meetings, not a corporate officer or director.

el's reliance on *Morman v. John Hancock Mut. Life Ins. Co.,* 672 F.Supp. 993 (E.D. Mich.1987), is misplaced. In *Morman,* the defendant employer's failure to inquire into racial wage disparities constituted proof of discriminatory intent only because that action was a departure from the employer's voluntarily-adopted affirmative action plan, which required such an inquiry in response to a minority employee's complaint of a race-related personnel action. *Id.* at 995–96. WSBT was under no duty to inquire into Ms. Manuel's complaints of wage disparity; Mr. Smith's responses to her cannot be deemed to indicate any discriminatory intent.

██ Correspondingly, the higher salary levels of female South Bend Tribune employees support no inference of pretext. By definition, Title VII prohibits only wage discrimination based on sex; disparities in salary among female employees do not establish discriminatory intent. Ms. Manuel appears to argue that this disparity indicates that the defendants' proffered justification—local labor market conditions—is incorrect. In other words, the higher salaries paid to employees with similar duties and responsibilities at the South Bend Tribune supposedly indicate that Ms. Manuel is not receiving a market-based wage.

This argument does not preclude summary judgment. Absent proof that Mr. Smith was aware of or established the salaries of the South Bend Tribune employees in question, the evidence would, at best, create only an inference that Mr. Smith's assessment of the local labor market was mistaken. That an employer's personnel decision was ill-informed or mistaken does not establish that it was a pretext for discrimination. *Pollard v. Rea Magnet Wire Company, Inc.,* 824 F.2d 557, 559 (7th Cir.), *cert. denied* —— U.S. ——, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). Accordingly, no genuine issue of material fact remains as to whether WSBT's proffered explanation is a pretext for discrimination based on sex.

### V. *Conclusion*

No genuine issue of fact remains for trial and the defendants are entitled to judgment as a matter of law. Accordingly, the defendants' motion for summary judgment should be, and hereby is, GRANTED.

SO ORDERED.